UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

In re:

114 TENTH AVENUE ASSOC., INC.

          Debtor.

------------------------------------------------ X

**OPINION AND ORDER**

**10 Civ. 5494 (SAS)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/10
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

114 Tenth Avenue Association, Inc. (the "Debtor") appeals the May 25, 2010 Order[1] ("May Order") of Honorable Allan L. Gropper, United States Bankruptcy Judge, granting the claim filed by Karen Nason as Trustee of the Krstic Irrevocable Trust ("Trust").  For the reasons set forth below, the May Order is affirmed.

## II.   BACKGROUND

### A.   The Parties

Zivadin Krstic is the sole shareholder and President of the Debtor,

---

[1]   *See* 5/25/10 Order Granting the Nason Property Proof of Claim in the Amount of $400,000 and Attorney's Fees ("May Order").

whose only asset is a mixed-use building located in Manhattan at 457 West 17th Street (the "Building").[2]  At the time of the Building's purchase in 1993, Krstic and Nason were romantically involved and living together, though the two never married.[3]  Together they had a son, Zillian, in 1994.[4]  Nason terminated her romantic relationship with Krstic and moved out of the Building in 2002.[5]

Since the end of their romantic relationship, Nason and Krstic have disputed the ownership of the Building.  Krstic asserts the Debtor used only his personal funds for its purchase, insisting that he and Nason never combined personal or business finances.[6]  Although both Krstic and Nason operated plant shops during their relationship, Krstic describes them as separate and distinct entities.[7]  Krstic also denies any agreement with Nason to share ownership of either

---

[2]    *See* 10/26/09 Declaration of Zivadin Krstic in Support of Debtor's Objections to Claims of Karen Nason ("Krstic Decl."), ¶¶ 1, 9-10, 27-28; May Order at 1.

[3]    *See* Krstic Decl. ¶¶ 12-13; 12/3/09 Declaration of Karen Nason in Support of Opposition to Debtor's Objection to Claims ("Nason Decl."), ¶ 10.

[4]    *See* Krstic Decl. ¶ 14; Nason Decl. ¶ 11.

[5]    *See* Nason Decl. ¶ 16.

[6]    *See* Krstic Decl. ¶¶ 11, 16-17, 24.

[7]    *See id.* ¶¶ 18-22.

the Building or the Debtor.[8]

Nason counters that Krstic used the profits from her plant business to pay the couple's expenses and make investments like the Building.[9]  Nason asserts that Krstic promised her half ownership of the Building, explaining that the Debtor would hold the title while Nason would own half of the Debtor's stock.[10]  As Krstic lived out-of-state on weekdays, Nason explains that he expected her to manage the Building's day-to-day affairs, and he used the income generated from the Building to pay their joint expenses.[11]  After she moved out in 2002, Krstic assumed complete control of the Building and denied Nason ownership rights in either the property or the Debtor.[12]

**B.     State and Family Court Proceedings**

On February 13, 2003, Nason filed an action for unjust enrichment and partition of the Building against Krstic and the Debtor ("Partition Action") in

---

[8]      *See id.* ¶¶ 25, 27, 29-32.

[9]      *See* Nason Decl. ¶¶ 12-13.

[10]     *See id.* ¶ 13.

[11]     *See id.* ¶¶ 14, 17.

[12]     *See id.* ¶ 18.

3

New York State Supreme Court, New York County.[13]  At the same time, Nason

filed a Notice of Pendency regarding her one-half ownership interest in the

Building.[14]  Shortly thereafter, Nason commenced an action against Krstic for an

order of filiation and child support ("Child Support Action") in New York State

Family Court, New York County.[15]

      While discovery was proceeding in the Partition and Child Support

Actions, Nason and Krstic agreed to a settlement resolving both disputes.  The

Family Court "so ordered" the agreement ("Stipulation and Order") on November

8, 2004.[16]  The Stipulation and Order provides for custody of Zillian as well as

Krstic's monthly child support and education obligations.[17]  It also names Zillian as

the beneficiary of the Building upon Krstic's death.[18]  If the Building were sold

prior to Krstic's death, however, Zillian would receive $400,000 of the sale

proceeds, this obligation to be secured by a mortgage in the same amount on the

---

[13]    *See* 1/29/03 Verified Complaint, Nason v. Kristic (Index No. 102493/03), Ex. G to Nason Decl., ¶¶ 16, 18-19.

[14]    *See* 2/14/03 Notice of Pendency, Ex. H to Nason Decl.

[15]    *See* Nason Decl. ¶ 21.

[16]    *See* 11/8/04 Stipulation and Order between Karen Nason and Zividin [sic] Krstic ("Stipulation and Order"), Ex. A to Nason Decl.

[17]    *See id.* ¶¶ 1-2, 8.

[18]    *See id.* ¶ 5.

Building.[19]  Finally, the Stipulation and Order provided that Nason would withdraw the Partition Action.[20]  Krstic, as the Debtor's President, executed the $400,000 mortgage on November 24, 2004.[21]

        In the instant proceedings, the parties dispute the purpose of the mortgage.  Nason asserts that she agreed to withdraw the Partition Action asserting her claims to ownership of the Building in exchange for the mortgage securing Zillian's interest in the property.[22]  In response, Krstic argues that as he was unable to obtain life insurance, the mortgage secured his child support obligations in the

---

[19]    *See id.* ¶¶ 5-6 ("In order to secure the Respondent's obligation to make the payment of $400,000 as herein provided, Respondent shall execute a mortgage in the form annexed hereto.").  At the same time, Krstic also settled the Trust for Zillian's benefit. *See* Trust Agreement between Zividin [sic] Krstic, Settlor, and Karen Nason, Trustee ("Trust Agreement"), Ex. A to Nason Decl.  In the event of the Building's sale, the $400,000 would be paid to Nason as Trustee of the Trust if Zillian were under age twenty-one. *See* Stipulation and Order ¶ 5.

[20]    *See* Stipulation and Order ¶ 10 ("Petitioner shall withdraw the action pending in the Supreme Court of the State of New York commenced by Petitioner against Respondent under Index No. 102493/03 seeking the partition of the property located at 415 West 17th Street, New York, N.Y.").

[21]    *See* 11/24/04 Mortgage between 114 Tenth Avenue Assoc., Inc. and Karen Nason as Trustee for Zillian Christian Krstic ("Mortgage"), Ex. B to Nason Decl.

[22]    *See* Nason Decl. ¶ 24; Nason Brief in Opposition to Debtor's Appeal ("Opp. Br."), at 23-24.

event of his death.[23]

### C.   Tax Foreclosure Proceedings

Meanwhile, due to unpaid real estate taxes, a tax lien trust initiated a foreclosure proceeding against the Debtor and other defendants with asserted interests in the Building ("Tax Foreclosure Action") in New York Supreme Court, New York County.[24]   The Tax Foreclosure Action began in May 2003 before the Stipulation and Order settled the Partition and Child Support Actions.[25]   The complaint named Nason as a defendant because of the Notice of Pendency she had filed regarding the Building, and she sought dismissal, ultimately granted, of the action against her.[26]   On October 6, 2004, the Debtor defaulted, and the Supreme Court issued a Judgment of Foreclosure and Sale.[27]   The Building was sold at

---

[23]   *See* Krstic Decl. ¶ 6; Debtor Brief in Support of Its Appeal from the Bankruptcy Court's Order Granting Nason's Claim ("App. Br."), at 7-8, 24.

[24]   *See* App. Br. at 7, 10; Opp. Br. at 4.

[25]   *See* App. Br. at 10.

[26]   *See* 8/11/03 Answer of Karen Nason, Ex. C to 10/26/09 Debtor's Memorandum of Law in Support of Its Objection to Claims of Karen Nason ("Debtor's Mem."). The Supreme Court granted summary judgment against Nason, striking her answer to the complaint. *See* 4/23/04 Amended Order of Reference, NYCTL 1999-1 Trust v. 114 Tenth Ave. Ass'n, Inc. (Index No. 109239/03), Ex. N to Nason Decl.

[27]   *See* 10/26/09 Debtor's Objection to Claims of Karen Nason ("Debtor's Obj."), ¶ 17. The Debtor asserts that although Nason knew about the Tax Foreclosure Action, she intentionally did not disclose the default to Krstic

auction on May 18, 2005.[28]

Krstic asserts that he never knew of the tax foreclosure sale until May 2005, months after the Stipulation and Order settled the Partition and Child Support Actions.[29]  The Debtor immediately sought unsuccessfully to vacate the foreclosure.[30]  After the U.S. Supreme Court denied certiorari, the winning bidder closed on the property in March 2009, depositing the sale surplus of over $1.9 million with the Clerk of the Supreme Court, who transferred the funds to the New York City Commissioner of Finance.[31]

### D.    Bankruptcy Proceedings

Having been unable to vacate the foreclosure, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code on November 10, 2005.[32]  The petition listed Nason as a creditor for a $400,000 "purported mortgage" identified

---

during the negotiation of the mortgage in November 2004; instead she insisted on obtaining security against the sale of the property, an event the Debtor claims only she knew was imminent. *See* App. Br. at 12.

[28]    *See* Debtor's Obj. ¶ 18.

[29]    *See id.* ¶¶ 16, 19.  Krstic explains that the Debtor was served at an old address on file with the state. *See id.* ¶ 16.

[30]    *See id.* ¶ 20.

[31]    *See id.* ¶¶ 20-22.

[32]    *See id.* ¶ 1.

as contingent, unliquidated, and disputed.[33]

Although the mortgage had been executed in November 2004, Nason did not record it until October 18, 2006, subsequent to the Debtor's bankruptcy petition.[34] As Nason never obtained relief from the automatic stay under the statute, the Debtor commenced an adversary proceeding seeking to vacate the recording of the mortgage, damages for contempt of the automatic stay, and a declaratory judgment that Nason, individually or as Trustee of the Trust, had no claim against the Debtor.[35]

The parties reached agreement on the first two issues, executing a stipulation under which the recording of the mortgage would be expunged and the Debtor would withdraw its claims seeking vacatur and damages.[36] In response to the remaining declaratory judgment issue, Nason moved for summary judgment, asserting the validity of the mortgage.[37] She also filed a $400,000 Proof of Claim

---

[33]    *Id.* ¶ 2.

[34]    *See* 10/16/06 NYC Department of Finance Office of the City Registrar Recording and Endorsement Cover Page, Ex. G to Debtor's Mem.

[35]    *See* 7/18/08 Complaint for Declaratory Judgment, Damages for Contempt and Related Relief, 114 Tenth Ave. Ass'n, Inc.  v. Nason (Adv. Pro No. 08-01347), Ex. H to Debtor's Mem., ¶¶ 74-75, 82, 91.

[36]    *See* 10/8/08 Stipulation between Debtor and Nason, Ex. I to Debtor's Mem.

[37]    *See* Debtor's Obj. ¶ 40.

against the Debtor.[38]  At a hearing on her motion in February 2009, Judge Gropper

dismissed the adversary proceeding without prejudice to allowing the Debtor to

object to Nason's claim at a later time.[39]

      The Building's sale closed in March 2009, and the Debtor commenced

another adversary proceeding against the New York City Commissioner of Finance

for turnover of the sale surplus.[40]  After the Commissioner turned over the funds, a

party claiming interest in the surplus could file a "Property Proof of Claim."[41]  On

September 21, 2009, Nason filed a $400,000 Property Proof of Claim against the

proceeds from the Building's sale.[42]

      The Debtor then objected to Nason's original Proof of Claim as well

as her Property Proof of Claim, moving that both be disallowed.[43]  In support of its

objections, the Debtor asserted that the mortgage was invalid for three reasons:

---

[38]    *See* 1/20/09 Proof of Claim of Karen Nason, Trustee of the Krstic Irrecovable Trust, Ex. A to Debtor's Mem.

[39]    *See* 2/26/09 Transcript of Pretrial Conference and Motion before the Honorable Allen L. Gropper, United States Bankruptcy Judge ("Transcript"), Ex. J to Debtor's Mem., at 32:23-33:9.

[40]    *See* 9/4/09 Stipulation of Settlement, 114 Tenth Ave. Ass'n, Inc. v. Commissioner of Fin. of N.Y. (Adv. Pro No. 09-1368), Ex. E to Debtor's Mem.

[41]    *See* Debtor's Obj. ¶¶ 23-24.

[42]    *See* 9/21/09 Property Proof of Claim, Ex. B to Debtor's Mem.

[43]    *See* Debtor's Obj. ¶ 5.

*first*, it was issued without consideration and in the absence of an obligation of the

Debtor to the mortgagee;[44] *second*, it was entered pursuant to an invalid Stipulation

and Order;[45] and *third*, Judge Gropper had characterized it as an invalid claim

against the estate during the February 2009 hearing.[46]  Finally, the Debtor argued

that the statutes of limitations and frauds, the prohibition of palimony claims, res

judicata, and collateral estoppel bar any claims arising from the Partition Action.[47]

Nason responded that the Debtor's objections should be overruled

because both the Stipulation and Order and the mortgage are valid and

enforceable.[48]  Nason further asserted that promissory estoppel bars the Debtor

from claiming that the Stipulation and Order and the mortgage are invalid.[49]

Finally, she claimed that the mortgage, although unrecorded, constituted a lien on

---

[44]    *See* Debtor's Mem. at 11-13.

[45]    *See id.* at 14-19.  The New York Child Support Standards Act
("CSSA") requires specific disclosures regarding child support obligations that the
Stipulation and Order did not contain. *See* N.Y. Fam. Ct. Act § 413(1)(h) ("A . . .
stipulation voluntarily entered into between the parties . . . shall include a provision
stating that . . . the basic child support obligation provided for therein would
presumptively result in the correct amount of child support to be awarded.").

[46]    *See* Debtor's Mem. at 19.

[47]    *See* Debtor's Obj. ¶ 49.

[48]    *See* Nason Memorandum of Law in Opposition to Debtor's Objection
to Claims ("Nason Mem."), at 8-32.

[49]    *See id.* at 32-34.

the Building attaching to the sale surplus.[50]

### E.   May Order

On March 31, 2010, Judge Gropper overruled the Debtor's objections to Nason's Proofs of Claim, entitling her to $400,000 from the sale surplus.[51]  The Bankruptcy Court held that the mortgage is valid and enforceable.[52]  First, it explained that the failure to include the CSSA disclosures in the Stipulation and Order did not render its provisions relating to the mortgage invalid or unenforceable.[53]  The Stipulation and Order "contains a number of distinct provisions, including those relating to the Mortgage . . . not fall[ing] under the rubric of child support and [] not covered by the disclosure requirements of the CSSA."[54]  Only the provisions "'directly connected or intertwined'" with the child

---

[50]   *See id.* at 34-35.

[51]   *See In re 114 Tenth Ave Ass'n, Inc.*, 427 B.R. 283, 286, 293 (Bankr. S.D.N.Y. 2010).

[52]   *See id.* at 290-93.  In so doing, the Bankruptcy Court expressly rejected the Debtor's third argument that it had held the mortgage invalid during a hearing on the summary judgment motion in the adversary proceeding against Nason. *See id.* at 293 n.7.  "The Court never made such a ruling, and any prior comments were made on an incomplete record and were expressly without prejudice to further proceedings. Even if they constituted law of the case, and they did not rise to that status, they would not be binding." *Id.*

[53]   *See id.* at 291.

[54]   *Id.*

11

support obligations would be invalid for failing to comply with CSSA.[55]   The

Bankruptcy Court also noted that although Krstic had attempted to invalidate the

Stipulation and Order in Family Court,  the Support Magistrate had expressly

refused to do so.[56]

Next, the Bankruptcy Court explained that because "[f]orbearance

from pursuing an action has been found by New York courts to constitute adequate

consideration for an obligation," the mortgage was supported by consideration.[57]

Strong policy concerns also favor enforcing settlement agreements.[58]  The

Bankruptcy Court found the Debtor's arguments regarding the merits of Nason's

Partition Action claim[59] irrelevant because a party's "'good-faith belief in the merit

of its position'" is sufficient consideration.[60]  "'That the party's view of the law

---

[55]     *Id.* at 290 (quoting *Cimons v. Cimons*, 861 N.Y.S.2d 88, 91 (2d Dep't 2008)).

[56]     *See id.* at 291.

[57]     *See id.* (reasoning that the Stipulation and Order between Nason and Krstic expressly required Nason to withdraw the then-ongoing Partition Action against the Debtor and Krstic).

[58]     *See id.*

[59]     The Debtor argued that the statutes of limitations and frauds, the prohibition of "palimony" claims, res judicata, and collateral estoppel barred Nason's Petition Action claims. *See* Debtor's Obj. ¶ 49.

[60]     *In re 114 Tenth Avenue Ass'n, Inc.*, 427 B.R. at 291-92 (quoting *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383 (1993)).

might ultimately prove meritless does not undermine the validity of the agreement.'"[61]

In response to the assertion that the mortgage did not secure a specific debt of the Debtor to Nason, but rather a debt from Krstic to Nason, the Bankruptcy Court explained that the security interest created by the mortgage is valid as nonrecourse debt.[62] "The Bankruptcy Code recognizes a nonrecourse debt, where a security interest is given to secure an obligation without any personal liability on the part of the grantor of security."[63] Moreover, under the Bankruptcy Code, such debt is presumptively treated as recourse debt in a Chapter 11 case.[64] "'[T]he absence of contractual privity between the lienholder and the debtor'" is not determinative, and a "'lien against the Debtors' estate is a 'claim' against the Debtors within the meaning of the Bankruptcy Code.'"[65] Here, the Trust Agreement specifically states that Krstic, as sole shareholder of the Debtor, caused

---

[61]    *Id.* (quoting *Denburg*, 82 N.Y.2d at 383).

[62]    *See id.* at 292 (noting the Debtor signed only the mortgage, not the Stipulation and Order between Nason and Krstic).

[63]    *Id.*

[64]    *See id.*

[65]    *Id.* (quoting *680 Fifth Ave. Assocs. v. Mutual Benefit Life Ins. Co.*, 29 F.3d 95, 98 (2d Cir. 1994).

it to execute the mortgage.[66]  The Bankruptcy Court overruled the Debtor's

objections, ordering the disbursement of $400,000 from the surplus to Nason.[67]

## III.   LEGAL STANDARD

### A.   Appeals of Final Bankruptcy Court Orders

The district courts are vested with appellate jurisdiction over

bankruptcy court rulings.[68]  Final orders of the bankruptcy court may be appealed

to the district court as of right.[69]  An order is final if "[n]othing in the order . . .

indicates any anticipation that the decision will be reconsidered."[70]  "'An order

allowing or disallowing a claim is a final, appealable order.'"[71]

### B.   Standard of Review

A district court functions as an appellate court in reviewing judgments

---

[66]     *See* Trust Agreement Art. 2.

[67]     *See In re 114 Tenth Ave. Ass'n, Inc.,* 427 B.R. at 293; May Order at 3.

[68]     *See* 28 U.S.C. § 158(a).

[69]     *See id.* § 158(a)(1).

[70]     *In re Palm Coast, Matanza Shores Ltd. P'ship,* 101 F.3d 253, 256 (2d Cir. 1996).

[71]     *EDP Med. Computer Sys. v. United States,* 480 F.3d 621, 626 (2d Cir. 2007) (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (B.A.P. 1st Cir. 2006)).

14

rendered by bankruptcy courts.[72]  Findings of fact are reviewed for clear error.[73]  A finding of fact is clearly erroneous if the court is "'left with the definite and firm conviction that a mistake has been committed.'"[74]  A bankruptcy court's conclusions of law, by contrast, are reviewed de novo.[75]

## IV.   DISCUSSION

### A.   Failure to Conduct an Evidentiary Hearing

The Debtor asserts that the Bankruptcy Court erred in failing to hold an evidentiary hearing regarding whether the Stipulation and Order and its corresponding mortgage secured Krstic's child support payments or were executed in exchange for Nason's withdrawal of the Partition Action.[76]  The Bankruptcy

---

[72]   *See In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993) ("[Appellant] relies on several cases for the reasonable proposition that the district court acts as an appellate court in reviewing a bankruptcy court's judgments.").

[73]   *See* Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). *Accord In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir. 2003).

[74]   *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[75]   *See In re Cody*, 338 F.3d at 94; *In re 139-141 Owners Corp.*, 313 B.R. 364, 367 (S.D.N.Y. 2004) (same).

[76]   *See* App. Br. at 23.

Court found the latter.[77]  The Debtor seeks reversal of the May Order and remand

for a full evidentiary hearing on the intent and purpose of the Stipulation and Order

and mortgage.[78]

      The Debtor asserts that Nason's position has been inconsistent

throughout the state court proceedings, pointing out that during the Tax

Foreclosure Action she stated that the mortgage secured Krstic's child support

obligations.[79]  Nason responds that the affidavit in the Tax Foreclosure Action

contained an inadvertent mistake and her pleadings in the instant action have

consistently characterized agreement to the Stipulation and Order and mortgage as

a necessary precondition to her withdrawal of the Partition Action.[80]

      Nason further argues that the Debtor waived its right, if any, to an

evidentiary hearing in the earlier proceedings.[81]  At the conclusion of the hearing

on the Debtor's objections to Nason's Property Proof of Claim, Judge Gropper

asked the Debtor's counsel whether additional material facts needed to be

---

[77]    *See In re 114 Tenth Ave. Ass'n, Inc.*, 427 B.R. at 291 ("The State Court Stipulation unequivocally requires that the Partition Action be withdrawn.").

[78]    *See* App. Br. at 27.

[79]    *See id.* at 24.

[80]    *See* Opp. Br. at 24-25.

[81]    *See id.* at 22.

determined beyond those on the face of the documents.[82]  The Debtor's counsel

responded no to the Court's question and indicated that the matter was ready for

decision.[83]  Nothing in the record indicates that the Debtor ever requested an

evidentiary hearing from the Bankruptcy Court, and the Debtor's papers presented

the issue, albeit briefly, to the Court.[84]  Courts have found waiver in analogous

situations.[85]

      In the alternative, it was not clearly erroneous for the Bankruptcy

Court to find that the settlement memorialized in the Stipulation and Order and

mortgage was issued in exchange for the withdrawal of the Partition Action.  Both

---

[82]    *See id.*

[83]    *See id.*

[84]    While the Debtor's submissions to the Bankruptcy Court focus on the failure of the Stipulation and Order to include the CSSA disclosures, they also assert that the mortgage only secures Krstic's child support obligations in the event of his death. *See* Debtor's Obj. ¶ 30; Debtor's Mem. at 5.

[85]    *See Drywall Tapers & Pointers of Greater N.Y. v. Local 530 of Operative Plasterers & Cement Masons Int'l Assoc.*, 954 F.2d 69, 77 (2d Cir. 1992) ("We note, in any event, that Local 530 did not request an additional evidentiary hearing until it had lost at the trial court level. When parties are content in the district court to rest on affidavits, the right to an evidentiary hearing is waived."); *Absolute Recovery Hedge Fund, L.P. v. Gaylord Container Corp.*, 185 F. Supp. 2d 381, 387 (S.D.N.Y. 2002) (finding waiver where the party has relied on its papers and made no request for an evidentiary hearing); *see also In re Garden Ridge Corp.*, 399 B.R. 135, 139 (Bankr. D. Del. 2008) (finding waiver where a party participated actively in briefing, indicated the motion could be decided on the papers, and failed to request a hearing until losing the motion).

documents state explicitly that the mortgage secures the $400,000 payment to

Zillian upon sale of the Building.[86]   The Stipulation and Order also expressly

orders Nason to withdraw the Partition Action.[87]   Neither document mentions

requiring security for Krstic's child support obligations.   "'[A] written agreement

that is complete, clear and unambiguous on its face must be enforced according to

the plain meaning of its terms,'" without reference to evidence outside of the four

corners of the document.[88]   After an independent review of the evidence, I am not

"'left with the definite and firm conviction that a mistake has been committed.'"[89]

### B.   Validity of the Stipulation and Order

---

[86]   *See* Stipulation and Order ¶¶ 5-6 ("In the event, at the time of such sale or other disposition, Zillian is under the age of 21, the payment of said $400,000 shall be made to Petitioner as Trustee for Zillian pursuant to a trust agreement . . . .   In order to secure the Respondent's obligation to make the payment of $400,000 as herein provided, Respondent shall execute a mortgage . . . ."); Mortgage at 1 ("[T]o secure the payment of an indebtedness in the sum of Four Hundred Thousand ($400,000) dollars . . . to become payable . . . at such time as the mortgaged premises shall be sold . . . .").

[87]   *See* Stipulation and Order ¶ 10 ("Petitioner shall withdraw the action pending in the Supreme Court of the State of New York . . . seeking partition of the property at 415 West 17th Street, New York, N.Y.").

[88]   *Goldman v. White Plains Ctr. for Nursing Care, LLC*, 11 N.Y.3d 173, 176 (2008) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002))

[89]   *In re Manville Forest Prods.*, 896 F.2d at 1388 (quoting *United States Gypsum Co.*, 333 U.S. at 395).

### 1.    Lack of Subject Matter Jurisdiction

On appeal, the Debtor advances a new argument challenging the validity of the Stipulation and Order and underlying mortgage.  In the bankruptcy proceedings, the Debtor argued that the Stipulation and Order was void for failing to include the required CSSA disclosures, and the Bankruptcy Court held that lack of disclosures only affected the child support provisions of the document.[90]  The Debtor now contends that the settlement is void because the Family Court did not have subject matter jurisdiction to "so order" all of the provisions of the Stipulation and Order and its underlying mortgage.[91]

This appears to be the first time the Debtor has raised the issue of the Family Court's subject matter jurisdiction.[92]  "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that

---

[90]    *See In re 114 Tenth Ave. Ass'n, Inc.*, 427 B.R. at 290.

[91]    *See* App. Br. at 15-21.  The Debtor signed only the mortgage, not the Stipulation and Order. *See* Mortgage at 2.

[92]    In the February 2009 hearing before Judge Gropper, the Debtor's counsel told the Court that Krstic's family lawyer had filed a motion in Family Court seeking to invalidate the Stipulation and Order.  *See* Transcript at 8:20-23. The Debtor's counsel did not tell the Bankruptcy Court the grounds for the motion. To my knowledge, the motion is still pending in the Family Court. *See* Debtor's Reply Brief in Support of Its Appeal from the Bankruptcy Court's Order Granting Nason's Claim, at 2.

question in a collateral attack . . . ."[93]  Even if the Debtor is correct about the limited nature of the Family Court's jurisdiction, it has presumably remained unchallenged for the last six years, and as a result, the Debtor may not collaterally attack the issue in federal court.

### 2.    Fraud

The Debtor also attacks the validity of the Stipulation and Order by arguing that Nason fraudulently induced Krstic to settle by not revealing the existence of the Tax Foreclosure Action.[94]  The Debtor thus asserts that it was error for the Bankruptcy Court to treat the Stipulation and Order as an enforceable agreement due to what it perceives as Nason's bad faith bargaining.

Krstic learned of the tax foreclosure sale on May 19, 2005.[95]  At that time, he could have moved the Family Court for relief from the Stipulation and Order on the basis of fraud or misrepresentation.[96]  Although there is no specific statute of limitations, an application for relief under CPLR § 5015(a)(3) must occur

---

[93]    *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982).

[94]    *See* App. Br. at 20-21.

[95]    *See* Debtor's Obj. ¶ 19.

[96]    *See* N.Y. Civil Practice Law and Rules ("CPLR") § 5015(a)(3).

within a reasonable time of the case's final disposition.[97]  More than five years

later, the time for Krstic to bring such a motion has long passed,[98] and this Court

will only consider the narrow issue of whether the Bankruptcy Court's decision

was correct.  It was not error for the Bankruptcy Court to rely upon the final and

unchallenged Stipulation and Order.

### C.    Validity of the Mortgage

The Debtor asserts that the Bankruptcy Court erred in finding that the

mortgage was supported by adequate consideration.[99]  The Bankruptcy Court held

that forbearance from pursuing an action constitutes adequate consideration.[100]  As

the Debtor's default in the Tax Foreclosure Action occurred prior to settlement, the

Debtor now argues that Nason's withdrawal of the Partition Action could not be

adequate consideration because the Judgment of Foreclosure and Sale divested her

and the Debtor of any property interest in the Building, save the equity of

---

[97]    *See City of Albany Indus. Dev. Agency v. Garg*, 672 N.Y.S.2d 541,
543 (3d Dep't 1998).

[98]    *See Rizzo v. St. Lawrence Univ.*, 805 N.Y.S.2d 479, 480 (3d Dep't
2005) ("Given the plaintiff's delay of more than two years in making his motion
despite awareness of all relevant facts surrounding the issue, we conclude that he
failed to seek vacatur within a reasonable time.").

[99]    *See* App. Br. at 27.

[100]    *See In re 114 Tenth Ave. Ass'n, Inc.*, 427 B.R. at 291.

21

redemption.[101]  The Debtor insists that Nason's subsequent forbearance from pursuing the Partition Action in exchange for settlement was an "illusory promise" because "any claim she had with respect to partitioning the Property was now worthless."[102]

The Debtor's assertion that the owner of the Building retained a right of redemption after the default in the Tax Foreclosure Action is correct,[103] but its allegation that this property interest was not valuable is incorrect.  The equity of redemption allows the holder to regain the property after the judgment of foreclosure until its sale.[104]  The unpaid taxes on the Building were $26,803 plus accrued interest for a property valued in the millions.[105]  The owner of the Building, as determined by the Partition Action, could have redeemed the property

---

[101]     *See* App. Br. at 28-29.

[102]     *Id.* at 29.

[103]     *See Norwest Mortg., Inc. v. Brown*, 830 N.Y.S.2d 158, 159 (2d Dep't 2006) ("A mortgagor or other owner of the equity of redemption of a property subject to a judgment of foreclosure and sale may redeem the mortgage at any time prior to the foreclosure sale.").

[104]     *See NYCTL 1999-1 Trust v. 573 Jackson Ave. Realty Corp.*, 921 N.E.2d 195, 199 (N.Y. 2009), *cert. denied*, — U.S.—, 130 S. Ct. 3466 (2010) ("The equity of redemption . . . allows property owners to redeem their property by tendering the full sum at any point before the property is actually sold at a foreclosure sale.").

[105]     *See* Opp. Br. at 4.

by paying the back taxes and interest at any time prior to its sale.

Nason's forbearance from pursuing the Partition Action was not illusory. "Normally, if a promise is vague and indefinite, or if the promisor is free to perform it or not, as he wills, it is wholly illusory and will not be enforced."[106] In exchange for the settlement, Nason agreed to cease seeking one-half ownership interest in the Building or damages for unjust enrichment. Nason's performance was not optional, vague, or indefinite. It is irrelevant that the only interest the Debtor could have conveyed to Nason in the Partition Action was one-half of the equity of redemption. Nason's forbearance from pursuing the Partition Action constituted adequate consideration for the Stipulation and Order.[107]

The Debtor finally asserts that it was error for the Bankruptcy Court to find that Nason's mortgage entitled her to a $400,000 distribution from the estate. It argues any property interest she had in the Building would have been extinguished after its sale.[108] Specifically, as the Debtor had only held the right of redemption at the time of settlement and had not exercised it prior to the

---

[106]    *Murphy Chemical Corp. v. McKetrick*, 57 N.Y.S.2d 899, 901 (Sup. Ct. N.Y. Co. 1945), *aff'd*, 76 N.Y.S.2d 836 (1st Dep't 1948).

[107]    *See C&D Dev., Inc. v. Sea Breeze Dev., LLC*, 874 N.Y.S.2d 560, 562 (2d Dep't 2009).

[108]    *See* App. Br. at 22-23.

23

foreclosure sale, Nason had no claim to the sale surplus.[109]

The Debtor's argument has no merit.  At the time of the settlement, the Debtor still held the title to the Building,[110] and the mortgage created a lien against the property.[111]  When the foreclosure sale extinguished the Debtor's property interest, the mortgage attached to the sale surplus.[112]  Nason is thus entitled to the distribution from the sale surplus.

## V.    CONCLUSION

For the foregoing reasons, Appellant's motion is denied.  The Clerk of the Court is directed to close this appeal.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          December 14, 2010

---

[109]    *See id.*

[110]    *See Bethel United Pentecostal Church, Inc. v. Westbury 55 Realty Corp.*, 760 N.Y.S.2d 60, 64 (2d Dep't 2003) ("The entry of a judgment of foreclosure and sale does not divest the mortgagor of its title and interest in the property until the sale is conducted.").

[111]    *See People v. Prince*, 441 N.Y.S.2d 586, 589 (Sup. Ct. Queens Co. 1981).

[112]    *See NYCTL 1998-1 Trust v. Gabbay*, 842 N.Y.S.2d 262, 265-66 (Sup. Ct. Bronx Co. 2007).

24

## - Appearances -

**For Appellant:**

Joel Shafferman, Esq.
Shafferman & Feldman, LLP
350 Fifth Avenue, Suite 2723
New York, New York 10118
(212) 509-1802

Mark S. Frey, Esq.
119 Fifth Avenue
New York, New York 10003
(212) 684-3929

**For Appellee**:

Gabriel Del Virginia, Esq.
The Law Offices of Gabriel Del Virginia
488 Madison Avenue, 19th Floor
New York, New York 10022
(212) 371-5478

Kenneth N. Miller, Esq.
The Law Offices of Kenneth N. Miller
350 Fifth Avenue, Suite 5720
New York, New York 10118
(212) 401-4028